The first argued case this morning, December 19, 1043, VernetX, Inc. v. Cisco Systems. Mr. Kennard. May it please the Court. This appeal challenges the PTAP's failure to apply the proper construction of the claim term Virtual Private Network Communication Link. Let me ask you right away what's troubling me. Apparently this question of the scope has been present throughout. Was there any attempt made to narrow the claim to be limited to what you are telling us is the correct construction? Yes, there was a disclaimer, and I should point out... Not a disclaimer, by amendment. No, no amendment, no, Your Honor. Well, then what's all the fuss about? That could very easily have been... remedied the entire problem, couldn't it? Well, even if there's no amendment, this Court has held that you still have to give effect to a prosecution disclaimer. And I would point out that VernetX... We're relying on the disclaimer. We're relying on the disclaimer. And VernetX made this disclaimer twice, once with regard to the claim term VPN in one proceeding, but also with regard to the very same claim term at issue here, virtual private network communication link. That's at Appendix 4518 to 24. So the claimed link must be a link in a virtual private network, and the communications in that network must be direct. Because the Board never applied the proper construction of VPN to the network disclosed in Chiuchi, this case must be remanded. And there is no... Doesn't Chiuchi disclose direct connection? And if the claim includes direct connection, irrespective of the disclaimer of non-direct, then the claim is anticipated by Chiuchi. No, Your Honor, because it's the network that must have direct communication. And there's no dispute as to what the claimed network is in Chiuchi, the claimed VPN. As the examiner... What was the reason... And your friend pointed out that there was no proposed amendment, that there was no attempt to narrow the claim to state what you say is the correct construction. What was the reason for declining or omitting to solve the problem in such a simple manner? Well, Your Honor, I don't know, but this Court has already held in Mangrove Partners that there's still a disclaimer even in the absence of amendment. But I wanted to get back to the point about what is the network, the alleged VPN in Chiuchi. And the examiner stated in the right of appeal notice, and this is at Appendix 1312, that, quote, the clients and servers form a closed CHTTP-based virtual network. Thus, the Chiuchi network, as opposed to the proxy-to-proxy link, comprises the user agent, the proxies, and the origin server that holds the patient records. And that's necessary because the transfer of patient records cannot occur without the participation of each element. And Chiuchi, in Steps 7 and 8, for example, in Appendix 2947, says the server-side proxy responds to the... forwards the request to the origin server, the origin server responds to the user request, sends it back through the proxies, and the client-side proxy decrypts the message and sends it to the user agent. So that is the network. And again, Chiuchi actually specifically describes the host, which is the origin server, Appendix 2946, as being in the closed network. Let me ask you one question, please. In Chiuchi, we have a user agent, a client-side proxy, a server-side proxy, and then an origin server. That's kind of the chain. The client-side proxy and the server-side proxy, are those computers? They are. They are computers. Yes. Now in the... and correct me if I get this wrong. In the 759 patent, you have a method for establishing a secure communication link between a first computer and a second computer over a computer network. Now the language there is broader than... with respect to computers than I think it was in the case of the 135 patent, Mangrove. There you had a client and a target computer. That's right. So why don't you have here a direct communication between computers, namely the client-side proxy and the server-side proxy? Well, Your Honor, it doesn't matter if any particular link is direct because the claim requires that the link between the first and second computer be a virtual private network communication link. So you have... the antecedent question is, is it a link in a virtual private network? And to determine that, you have to apply the disclaimer to the network in Kiyuchi. That's what the board didn't do. And from the outset, Vernetix has challenged Cisco's and the examiner's reliance upon Kiyuchi's proxy-to-proxy link because it is not part of a VPN and indeed prevents the formation of a VPN. Why is that connection not part of a VPN? The client-side proxy to the server-side proxy? Because the network as a whole does not have direct communications. And that's the key question. That's why the disclaimer has to be applied. And that's what we argued. We argued at Appendix 1444 that Kiyuchi's proxies prevent the creation of a VPN because they disallow direct communication between a user at one hospital and the server at which the resources are located at another. And the board did not grapple with this issue because at Appendix 21, it found that a VPN communication link is not limited to computing systems that directly address each other and Kiyuchi would satisfy the limitation even if the communications are indirect. So it never applied the proper construction. But you're saying we should do in this case what was done in Mangrove, namely send it back to the board, vacate and say, you got the claim construction wrong. A direct communication is required and send it back to the board. That's exactly right. And because the antecedent, they have to find that Kiyuchi discloses a VPN with direct communications, which is the antecedent question to finding that any link in Kiyuchi is a VPN communication link. You're saying there's a fact dispute now as to what the nature of Kiyuchi is? Well, I think that it's a factual... You're saying we can't... Assume for the moment we were to agree with you and follow Mangrove and say, yes, the claim construction was erroneous even though the 135 is not the 759. You're saying we can't decide the issue of whether there's anticipation or obviousness. I think that's right. I mean, there has been no finding about whether the network in Kiyuchi is a VPN with direct communication. So that is the necessary thing that has to be found. I mean, the court has previously found it in upholding a jury verdict  The jury verdict was sustained because there was evidence that Kiyuchi does not allow direct communication because it sets up and terminates the connection. So you can't have direct communication through routers and firewalls as long as you're not terminating the connection, as long as there's direct addressability. But you would agree there is, quote, direct communication, close quote, between the client-side proxy and the server-side proxy in Kiyuchi? Yes, I would agree with that, but I think it's irrelevant and the board didn't find that because the directness has to be a property of the VPN. And so for a link to be part of a VPN, the network has to have direct communication. And again, the examiner to find the network is between the clients and the servers. And so I think that's the question that has to be decided here. So I think the case does need to go back. And there's no mootness because we have challenged throughout this finding that the VPN communication link is simply the link between the proxies based on the fact that it's not a link within a VPN. So there's no mootness because you have to decide the claim construction issue or the board has to, you have to decide the claim construction issue and the board has to apply it as a matter of fact. If there are no further questions, I'll save my time for the book. Okay, thank you. Your honor. Thank you, your honors. May it please the court. I'd like to start by just responding to counsel's argument regarding the link with respect to the virtual private network and go directly to the claim. Let's start with the claim language. The claim language in referencing the virtual private network communication link is saying it's over the computer network. So the computer network that we're looking at with respect to this link is the generic, the computer network. There's not this requirement within the claim that we identify and find a virtual private network. The claim is required that we look for a link over a computer network. Not this special virtual private network communication link where we're going to import the disclaimer from Mangrove. That would actually break this claim if we import the construction from Mangrove. This claim, as we look at this claim, is establishing a link. We're creating a new link. And under their theory, this new link would be a new link within a virtual private network. So Mr. Empey, you're saying that, assume for the moment that the board erred in the claim construction. That it erred and that the communication link does have to be direct. You're saying it's met here because Kiyuchi shows direct communication as I think Mr. Kinnaird agreed, between the client side and server side proxies. That is correct, Your Honor. The link that we're looking at here, the virtual private network communication link over the computer network. If we're somehow importing... What's your argument again? He said, yes, that's true. If you could just repeat what you said a minute ago, it would be helpful to me. He said, yes, that's true. You have that direct communication between the proxies, but that doesn't solve the problem because it has to be over a computer network, I think is what he was saying. Correct. Under the theory that he's espousing, we have to identify a separate virtual private network. We have this claimed virtual private network communication link, which we've identified and the board has identified as being the client side and server side proxies. And there's directness there. Their argument is we have to look at some other network and identify that other network. And then within that network, we have to somehow quantify and say that that qualifies as a virtual private network applying the Mangrove standard. But this claim language doesn't say that. This claim language does not have us looking for this separate virtual private network. This language is very clear. It's a link over a computer network. It's not a link over a virtual private network. And we think that's one of the primary distinctions. Well, his position, if I understand it, is that the claim language doesn't have to say it because there's a prosecution disclaimer that says it. Their argument is there's a prosecution disclaimer with respect to virtual private network. That's a different claim term than what's recited here. We have a virtual private network communication link. We have a link versus a network. And our position is because it's a different claim term, it does not automatically follow the disclaimer with respect to a network, applies the exact same way with the same disclaimer of scope with respect to a link that's a component of that network. There's a different claim term, and this is going to have a different scope. And we can't just automatically assume, because there's some commonality of words, that that disclaimer would apply to a different claim term in a different pattern. And what about Cuyuchi? With respect to Cuyuchi, Your Honor, it's very clear. We have a client-side proxy and a server-side proxy. Those are the first and second computers as recited in the claim. We then look to see what type of link there is between that client-side proxy and the server-side proxy as the first and second computers. The Board is very clear. The client-side proxy is talking to the server-side proxy. The server-side proxy is talking to the client-side proxy. Patent owner multiple times characterized that communication as a point-to-point communication. This point is talking to that point. It's a direct communication. They further argued in their briefing that that's not a direct connection. They argue that it's an indirect connection. The Board addressed that and rejected that argument. We clearly have substantial evidence. We have fact findings that the client-side proxy and the server-side proxy are the first and second computers respectively. They talk directly, and that's what the claim would require even under their proposed construction. If there are any further questions, I think your questions have raised most issues. I'll exceed the rest of my time. Thank you. Your Honor, I'd like to turn to the claims because I think my colleague is confusing two different terms. There is, if you look at Claim 1, and this is Appendix 165, there is the term used, computer network, a method for establishing a secure communication link between a first computer and a second computer over a computer network. That's referring to the public network, can be the Internet, for example. That's not what we're talking about. We're talking about at the very last clause in that claim where the secure communication link, being a virtual private network communication link over the computer network. So the virtual private network is on the larger computer network, is separate. And the Board found in Appendix 20 and 28 that the virtual private network is separate from the link. And in fact, if you look at the dependent claims here, 4, 5, 18, 20, they all recite a virtual private network. So when you use the same term, virtual private network communication link, that's referring to the same virtual private network. So you have to identify, what is the virtual private network in QG and determine whether this is a link in a virtual private network. You're saying that's the secure communication link, but as the first line of the claim, it's a secure communication link between a first computer and a second computer over a computer network. That's the Internet. That's the public network. Computer network means that. But then they define what is a secure communication link and they define it as a virtual private network communication link over the computer network. So you have to say, what is the link referred to be a virtual private network communication link? It must be a link in a virtual private network formed on the public computer network. You're saying, Mr. Conner, I want to make sure I understand you, that you would say, okay, yes, you do have a direct communication between the client-side proxy and the server-side proxy, but that's not a direct communication in the sense of being a virtual private network communication. That's your argument as to why QG showing that direct communication between the client and server-side proxy isn't enough. Is that correct? Exactly. So you have to show that it's a link in a virtual private network, which means that it has to have, the network has to have direct communication. The examiner defined the network as between. But what about getting back to, I think, what maybe Judge Lurie was touching on, the first, I guess, words of that clause say, establishing the secure communication link between the first computer and the second computer over a computer network based on the applied goes on. Doesn't that, aren't you establishing a secure communication network in QG between the client-side proxy and the server-side proxy? Well, no, Your Honor, I don't think you can say that the link between the user agent and the client-side proxy is one network and the client-side and the server-side proxy is another network and the server-side proxy, the origin. There's a network that allows the communication of patient records. The examiner said, that is the VPN. The VPN goes from the clients to the servers. So with that finding, they then have to apply the disclaimer and the proper construction of a VPN. So if they're going to rely on that link between the proxy and proxy, they have to show it's a link within a VPN. Of course, in Mangrove, it did involve, it says the client computer and the target computer, there was some language like that in the 135. That's right, yeah. And because that's, and there the term is VPN, between it. So here we have a communication link. So regardless of which first computer and second computer, what link you're looking at, it has to be a VPN communication link, i.e. a link within a VPN. And Your Honor, I was reminded by my colleagues in terms of why there was no amendment. The term, the patent had been inserted in litigation, so there was no amendment. But again, Mangrove Partners makes clear you don't need amendment. We did not, by the way, argue that the link between the proxies was indirect. We've always argued that it prevents the formation of a VPN because it prevents direct communication. That's an appendix of 1444. So we think what the board needs to do, they should go back with a directive to apply the disclaimer to the term VPN and apply that to the network disclosed in Kiyuchi and then make a determination of whether or not that meets the claims. Just to be clear, say there was no amendment. That's clear. Was there a petition for amendment? I don't believe so, no. Okay. But again, there does not have to be under Mangrove Partners. Thank you very much, Your Honor. Okay, thank you. Thank you both. The case is taken under submission.